IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE GROUP, | ) | |
| a Delaware corporation, | ) | |
| | ) | Case No. 10 C 611 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| SINGLES ROOFING CO., INC., and Illinois | ) | |
| corporation, UNITED STATES OF AMERICA | ) | |
| ROOFING CO., INC. an Illinois corporation, | ) | |
| and ROBERT DURCHSLAG, an Illinois | ) | |
| citizen, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff The Hanover Insurance Group ("Hanover") filed suit against Defendants Singles

Roofing Company, Incorporated ("Singles Roofing"), United States of America Roofing Company,

Incorporated ("USA Roofing" and together with Singles Roofing, the "Company Defendants"), and

Robert Durchslag ("Durchslag" and together with the Company Defendants, "Defendants") for

breach of contract, exoneration and *quia timet*, specific performance of an indemnity agreement,

and a preliminary injunction.   Plaintiffs also moved for a preliminary injunction, and brought a

rule to show cause against Defendants for failing to comply with this Court's Temporary

Restraining Order (the "TRO").   Defendants objected to a magistrate judge's recommendation that

Defendants be sanctioned for their failure to comply with the TRO.   Following briefing on all of

the above motions, each of the Defendants filed voluntary petitions for bankruptcy, at which time these proceedings were stayed. In December 2011, Hanover advised this Court that Durchslag had been denied a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(8), and therefore neither the agreement to stay this case nor the automatic stay protected Durchslag. Hanover requests that this Court rule on all of the above motions solely with respect to Durchslag. For the reasons stated below, the Court -- in each case solely as to Durchslag -- denies Defendants' Motion to Dismiss, denies Hanover's Motion to Strike Defendants' Untimely Response, grants Hanover's Motion for a Preliminary Injunction, and adopts the magistrate judge's Report and Recommendation for sanctions.

These rulings do not apply to the Company Defendants, whose proceedings before this Court remain stayed by agreement of the parties, and by application of 11 U.S.C. § 362. The impact of this ruling on the Company Defendants is addressed at the close of this Opinion.

## I. PROCEDURAL HISTORY

Shortly after filing suit in January 2010, Hanover filed motions for issuance of both a temporary restraining order ("TRO") and a preliminary injunction (the "Preliminary Injunction") against Defendants, in each case seeking to require Defendants to post collateral sufficient to protect Hanover from losses attributable to claims asserted against performance bonds.

The Court granted Hanover's TRO on February 25, 2010, and ordered Defendants to tender $2.6 million to Hanover as collateral security (the "Collateral"). On March 1, 2010, Hanover filed its first motion for rule to show cause why the Defendants should not be held in contempt for failing to tender the Collateral. On March 18, 2010, the Court voided the first TRO and entered

2

a new TRO, ordering Defendants to provide Collateral to Hanover in the amount of $2.6 million by 5:00 p.m. on March 19, 2010. Defendants failed to do so, and Hanover filed a second motion for rule to show cause on March 23, 2010. Defendants responded with an emergency motion to vacate the TRO, which was denied; however, the Court granted Defendants until March 29, 2010 to tender the Collateral. Defendants again failed to do so. The Court granted Hanover's oral motion for a rule to show cause at a status hearing on March 29, 2010 and referred the show cause hearing to Magistrate Judge Kim for hearing.

The Court heard oral argument on the Motion for Preliminary Injunction on April 13, 2010. Hanover also moved on April 8, 2010 to strike Defendants' untimely responses to its Motion for a Preliminary Injunction, and the Court took that motion under advisement at the hearing on April 13, 2010, to be determined along with the Motion for Preliminary Injunction. On April 19, 2010, Defendants filed a Motion to Dismiss Hanover's First Amended Complaint, raising many of the same issues set forth in Defendants' response to the Motion for Preliminary Injunction.

On May 26, 2010, Magistrate Judge Kim held a hearing on the motion for sanctions, and announced a ruling date of July 1, 2010. On June 29, 2010, each of the Defendants filed for bankruptcy. Magistrate Judge Kim issued his Recommendation on July 1, 2010 that Defendants be sanctioned for failing to comply with the TRO. (R. 95, the "Recommendation"). On July 8, 2010, Defendants filed an objection to the Recommendation (the "Objection"). The only basis for the Objection was the impact of the bankruptcy filings and the application of the automatic stay, 11 U.S.C. § 362, to the proceedings in this Court. On August 5, 2010, the Court stayed the proceedings by agreement of the parties, pending conclusion of the bankruptcy proceedings.

3

On February 8, 2011, the United States Bankruptcy Court for the Northern District of Illinois (Sonderby, J.) (the "Bankruptcy Court") denied Durchslag a discharge in bankruptcy, on the grounds that Durchslag had filed a previous petition for bankruptcy less than eight years prior to the petition he filed in June 2010, in violation of 11 U.S.C. § 727(a)(8). On October 20, 2011, the Bankruptcy Court dismissed as moot the related adversary proceeding that Hanover had filed against Durchslag. Pursuant to the joint stay agreement between the parties, the Court lifted the stay of these proceedings as to Durchslag and the Motion to Dismiss, Motion for Preliminary Injunction, and Recommendation are now properly before this Court with respect to Durchslag (but not with respect to the Company Defendants, who remain in Chapter 7 bankruptcy and for whom the stay remains in effect). On December 23, 2011, Hanover filed its brief in opposition to the Objection solely with respect to Durchslag, and urged this Court to adopt the Recommendation as to Durchslag, and to issue a ruling on the Motion for Preliminary Injunction, the Motion to Dismiss, and the Motion to Strike with respect to Durchslag only.

## II. DEFENDANT'S MOTION TO DISMISS

The Court first considers Defendants' Motion to Dismiss because, if granted, it would moot Hanover's Motion for a Preliminary Injunction.

### A. BACKGROUND

The following facts are taken from Hanover's Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Singles Roofing is a construction company that performs construction projects throughout the United States. (Am. Compl. ¶ 7.) At the request of Singles Roofing, Hanover, as a surety, issued

4

numerous payment and performance surety bonds (the "Bonds") on behalf of Singles Roofing for a number of projects.  (Am. Compl. ¶ 8.)

As consideration for Hanover's issuance of these Bonds on behalf of Singles Roofing, Hanover required Defendants to enter into an Agreement of Indemnity for Contractors ("Indemnity Agreement"), which was executed by Defendants on November 18, 2008.  The Indemnity Agreement required Defendants to indemnify and hold Hanover harmless from all liability under the Bonds, providing, in relevant part, that:

> The Indemnitors shall exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment, and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees: (a) by having executed or procured the execution of the bonds; or (b) in making an independent investigation of any claim, demand, or suit; or (c) in defendant any suit, action, mediation or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or (d) in enforcing any of the covenants, terms and conditions of this Agreement.

(Am. Compl. ¶ 9.)  Moreover, the Indemnity Agreement requires Indemnitors to post collateral upon Hanover's demand to cover any loss, stating that:

> Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor . . . .  The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

(Am. Compl. ¶ 12.)  As of January 27, 2010, Hanover had received bond claims in a total of over $1.5 million against the bonds.   (Am. Compl. ¶ 14.)  Hanover has since notified Defendants of

these claims on multiple occasions and requested Defendants to indemnify Hanover from the claims and to post collateral. (Am. Compl. ¶ 15.)

Also pursuant to the Indemnity Agreement, Defendants agreed to provide Hanover "or its designated agents . . . full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any bond is completely terminated and the claims of the Surety against any Indemnitor are fully satisfied." (Am. Compl. ¶ 16.) Although Hanover and its construction consultant Mark Lee attempted to inspect the books and records, Defendants have failed to provide access to these books and records. (Am. Compl. ¶ 17.) Hanover's exposure under the Bonds (including fees and expenses) as of January 2010 totaled $1,749,771.73 and it faces additional exposure for bonds subsequently asserted. (Am. Compl. ¶ 18.)

### B. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. A claim has facial plausibility

6

when the factual content in the pleadings allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## C. DISCUSSION

As an initial matter, neither Durchslag nor Hanover "contends that Illinois's choice of law rules require [the Court] to apply the substantive law of another state." *See Southern Illinois Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 672 (7th Cir. 2002) (internal citations omitted). Because Durchslag is an Illinois citizen and the Indemnity Agreement at issue was executed in Illinois and signed by a notary public in Illinois (*see* R. 80 ¶ 2; R. 80 Ex. 1, p.3), "there is a reasonable relation between the dispute and the forum whose law has been selected" such that it is appropriate to "apply Illinois law in this case." *See id.* More specifically, the Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *See, e.g., Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001).

Durchslag' principal objection to Counts I, II, and III of Hanover's Amended Complaint is that"[t]here is simply no connection between the description of the claims" for damages, specific performance, and exoneration and *quia timet* "and the relief requested." (R. 73, p. 2.) Durchslag then argues that Count IV for a preliminary injunction should be dismissed because a preliminary injunction is a request for relief, not a separate cause of action, and because all of the other Counts should be dismissed and a claim for a preliminary injunction cannot stand alone. The Court considers the adequacy of each count of the Amended Complaint in turn.

### i. Count I

7

Count I alleges a breach of contract claim against Durchslag. "Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Development LLC v. Nat. City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. 2004)). Durchslag contends that the Amended Complaint fails to allege three of the four required elements of breach of contract, and that its allegations about the existence of a contract "constitute the entire statement of the claim for breach of contract." (R. 84, ¶ 3.) Durchslag ignores, however, the final two paragraphs of Count I of the Amended Complaint. (R. 80, ¶¶ 22-23.) After setting forth Durchslag's contractual obligations under the Indemnity Agreement in Paragraph 21, Hanover explicitly alleges in Paragraphs 22 that Durchslag breached the express terms of the Indemnity Agreement by "failing and refusing to indemnify and hold Hanover harmless from the Bond claims, to post collateral in the amount of Hanover's initial estimated contingent Bond exposure and to allow Hanover free access to their books and records." (R. 80, ¶ 22.) In Paragraph 23, Hanover also alleges damages incurred as a result of this breach. (R. 80, ¶ 23.) Although Hanover goes on to specify damages in the amount of $1,749,771.73, or the amount of its collateral demand, all that is necessary to state a claim for breach of contract, under notice pleading requirements, is to allege the existence of damages, which Hanover has done. *See Allstate Ins. Co. v. Winnebago Co. Fair Ass'n, Inc.*, 475 N.E.2d 230 (Ill. App. 1985) ("An adequate complaint based upon breach of contract must allege the existence of damages as a consequence of the breach."). The precise nature of the expectancy damages recoverable for this breach of contract, whether they

be for costs or attorneys fees incurred in bringing this action, amounts paid by Hanover that it would not have paid, or particular losses for lack of access to books and records, can be precisely calculated at a later stage. Finally, within Hanover's factual assertions incorporated into each Count of the Amended Complaint, it alleges its own performance under the Indemnity Agreement by issuing bonds on behalf of Singles Roofing for multiple construction projects. (Am. Compl. ¶¶ 8-9.) Thus, Hanover in fact satisfactorily pled each element of a breach of contract.

Durchslag further argues that the claim for breach of contract is not ripe because the Indemnity Agreement only requires indemnification for liabilities and costs that Hanover "may pay or incur," but the Amended Complaint makes no allegation that any liabilities, losses, costs, or expenses were incurred. The Indemnity Agreement explicitly provides, however, that "payment shall be made to the Surety by the Indemnitors as soon as liability exists *or is asserted against the Surety, whether or not the Surety shall have made any payment therefor*." (Am. Compl. ¶ 12.) (emphasis added). The Court must give unambiguous terms their clear and ordinary meaning in construing the contract in order to determine the intent of the contracting parties. *See Reger*, 592 F.3d at 764. Thus, under the clear terms of the Indemnity Agreement, Durchslag's breach occurred when the Defendants did not make payments "as soon as" liability was "asserted against" Hanover by the different companies described in the Amended Complaint–in other words, the condition precedent to Durchslag's obligation to make payments was that claims be "asserted against" Hanover. That condition has occurred, accepting the facts in Hanover's Amended Complaint as true, *see Murphy*, 51 F.3d at 717; as such, Durchslag's obligations were triggered. *See, e.g.*, *Travelers Casualty & Surety Company v. Ockerlund*, 2004 WL 1794915 at *4 (N.D. Ill. Aug. 6, 2004)

(Plunkett, J.) (finding that where the "conditions precedent to defendant's obligations under" an "Indemnity Agreement" had "occurred," there was a likelihood of success on the merits for purposes of a preliminary injunction hearing); *see also Krempel v. Martin Oil Marketing, Ltd.*, 1995 WL 733439 at * 5 (N.D. Ill. Dec. 8, 1995) (Grady, J.) ("It is the happening of the occurrence that party has agreed to indemnify against that triggers the indemnity obligation, and the indemnitor's failure to pay which gives rise to the cause of action."). Furthermore, the Indemnity Agreement states that "Indemnitors shall exonerate . . . the surety from and against every . . . demand, liability . . . which the surety shall pay or incur." Here, although Hanover does not allege that it has, as of yet, made any *payments*, it does allege that it has *incurred* liabilities and demands, and, accepting the allegations in the Amended Complaint as true, Durchslag has failed to exonerate those demands through payment. Thus, under the terms of the contract, Hanover's breach of contract claim is ripe.

Moreover, Durchslag ignores the other breaches asserted by Hanover in Count I–that Durchslag and the other Defendants failed to post collateral in the amount of the estimated Bond exposure and to give Hanover free access to their books and records. Again, Hanover has sufficiently alleged that the Indemnity Agreement gave it a right to the posting of such collateral and access to books and records, that it performed its obligation of posting bonds, and that Durchslag breached these terms of the Indemnity Agreement by not providing access and posting collateral upon Hanover's request. Hanover also alleged that it has suffered damages in the form of exposure to liabilities of $1,749,771.73 as a result of the collateral not being posted and the lack of access to books and records that would have revealed Durchslag's and the other Defendants'

financial status.

Finally, Durchslag objects to the nature of Hanover's prayer for relief as it relates to the breach of contract claim because it demands exoneration for liabilities, losses, and expenses incurred, when no such losses have as of yet been incurred by Hanover. Durchslag conveniently ignores, however, that Hanover's prayer for relief also requests that Defendants pay for "Hanover's costs, including reasonable attorneys' fees, incurred herein." (R. 80, pp. 13-14.) Hanover's breach of contract claim alleges damages. Some of the damages that one would reasonably expect Hanover to have incurred as a result of Durchslag's breach include the attorneys fees and costs incurred in bringing this action. In fact, under the Indemnity Agreement, Durchslag agreed to indemnify Hanover for precisely these expenses – expenses incurred in enforcing any of the covenants, terms and conditions of this Agreement. Thus, Hanover's prayer for relief sufficiently encompasses the damages that would be expected to result from Durchslag's breach of contract in Count I. Thus, the Court finds that Hanover's claim for breach of contract allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged and denies Durchslag's Motion to Dismiss Count I.[1]

### ii. Count II–*Quia Timet* and Exoneration

In Count II, a claim for exoneration and *quia timet*, Hanover alleges that it has demanded that Defendants "indemnify and hold it harmless from the claims asserted against it and post

---

[1] Notably, Durchslag does not argue that the Indemnity Agreement is unenforceable, that he has a defense to his duty to perform, that he has complied with the terms of the agreement or that Hanover has waived its right to enforce those terms. Durchslag also does not contest that he and the Company Defendants are jointly and severally liable for all obligations under the Indemnity Agreement.

collateral in the amount of $1,749,771.73," because as the principal, "Singles owes Hanover the duty of exoneration, requires Singles to perform its obligation before Hanover is called upon to perform its obligations under the Bonds." (R. 80 ¶ 25-26.) Hanover further alleges that it is entitled to "*quia timet*," which "secures a surety from loss when it appears that the principal is reasonably likely to fail or refuse to perform or to protect the surety from loss." (R. 80 ¶ 27.) "Under the law of suretyship, exoneration and *quia timet* refer to a secondary obligor's (here Hanover's) right to relief when the primary obligor breaches its duty to perform the underlying obligation." *Travelers Cas. & Surety Co.*, 2004 WL 1794915, at *1, n.1 (citing Restatement (Third) of Suretyship and Guaranty § 21 cmts. i, j,k (1996)).

The equitable remedies of *quia timet* and exoneration allow a court to, "at the request of a surety, seize funds due its principal and apply them to the principal's debts if the surety can show that: the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid the surety will become liable." *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954); *see also e.g., U.S. Fidelity & Guaranty Ins. Co. v. Cler Constr. Servs., Inc.*, 2003 WL 1873926 at *2 (N.D. Ill. Apr. 11, 2003). More specifically, although "quia timet and exoneration contain common substantive elements," to be entitled to exoneration a surety must establish that a debt "is presently due," and to be entitled to quia timet it must establish that the debt "will become due." *See Borey v. Nat. Union Fire Ins. Co. of Pittsburgh, Penn.*, 934 F.2d 30, 32 (2d Cir. 1991) (citing *New Orleans v. Gaines' Adm'r*, 131 U.S. 191 (1889)). In order to successfully state a cause of action for *quia timet* and exoneration, in addition to alleging the existence of a debt that is or will become due, a plaintiff surety must also allege that it "is or will become liable for the debt, and that absent

12

equitable relief, the surety will be prejudiced because it will be forced to advance money to the creditor." *See id.* at 33.

Hanover's Amended Complaint sufficiently pleads the elements of both exoneration and *quia timet*. It pleads the existence of potential and existing liability on Bond claims, and also that Durchslag has refused to "indemnify Hanover from the pending claims" or "post collateral in any amount" as required under the terms of the Indemnity Agreement laid out in Hanover's factual assertions. (R. 80 ¶¶ 9, 12, 19 28.) It also sets forth that it, as surety, will become liable on those claims if not paid by Hanover and that it will be prejudiced by having to pay the Bond obligations without being collateralized by Durchslag. (R. 80 ¶¶ 8, 19, 29.) Hanover alleges that it will be prejudiced by having to pay its Bond obligations. Finally, Hanover sets forth the required elements for an equitable remedy, that it is "without a plain, speedy remedy at law" and will be "irreparably injured" by Durchslag's failure to indemnify it and post collateral now because it will be forced to pay its Bond obligations and Durchslag is likely to, in the meantime, "sell transfer, dispose, lien, secure, or otherwise divest their assets from being used to discharge the [Defendants] obligations." (R. 80, ¶¶ 29-30.)

Although Durchslag concedes that the Amended Complaint "may" "sufficiently plead 'the common elements for *quia timet* and exoneration," and makes no specific argument with respect to the sufficiency of Hanover's pleading of this Count, he claims that Hanover "requests no relief in the form of exoneration or *quia timet* for the alleged bond claims asserted, which are expressly tied only to preliminary relief. There is simply no connection between the description of the claims

and the relief requested for Count II." (R. 84, p. 5.) The relief that a Court may provide under *quia timet* and exoneration causes of action is to "at the request of a surety, seize funds due its principal and apply them to the principal's debts." *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954). The portions of Hanover's prayer for relief requesting that the Court "[r]equire[] Defendants to indemnify and *exonerate* Hanover for all liabilities, losses, and expenses incurred" satisfactorily describes the relief available for exoneration and *qui timet*–to compel payment from Hanover to pay for its debts–or the liabilities, losses, and expenses. (R. 80 pp. 13-14) (emphasis added). Thus, the allegations in Hanover's Amended Complaint are sufficient to show facial plausibility of the relief requested and the factual basis for that relief and the Court therefore denies Durchslag's Motion to Dismiss Count II. *See Brown v. JP Morgan Chase Bank*, 334 Fed.Appx. 758, 759 (7th Cir. 2009) ("[T]o survive a motion to dismiss a complaint's request for relief must be 'plausible on its face'") (quoting *Iqbal*, 129 S.Ct. at 1949).

### iii. Count III–Specific Performance

In Count III for specific performance of the Indemnity Agreement, Hanover states that it is entitled to the equitable remedy of specific performance of the Indemnity Agreement in the form of indemnification of Hanover, posting collateral, and providing Hanover access to Durchslag's books and records. (R. 80 ¶¶ 23-35.) "To state a cause of action for specific performance," under Illinois law "the plaintiff must allege and prove the following elements: (1) the existence of a valid, binding, and enforceable contract; (2) compliance by the plaintiff with the terms of the contract, or proof that the plaintiff is ready, willing, and able to perform the contract; and (3) the failure or

14

refusal of the defendant to perform his part of the contract." *Hoxha v. LaSalle Nat. Bank*, 847 N.E.2d 725, 729 (Ill. App. Ct. 2006). Here, Hanover's Amended Complaint alleges facts that, when "accepted as true, . . . state a claim to" specific performance that is "plausible on its face." *See Iqbal*, 129 S.Ct. at 1949. Hanover incorporates in its claim for specific performance the allegations of a valid, binding, and enforceable contract and its own compliance with that contract (through the issuing of bonds and demanding that Hanover indemnify it, post collateral, and allow access to books and records) set forth in its breach of contract claim in Count I. (*See* R. 80 ¶¶ 31-35.) Hanover also sets forth Defendants' failure to perform their part of the contract through failing to indemnify Hanover, failing to post collateral, and not providing Hanover access to their books and records. (*See* R. 80 ¶ 35.) Finally, Hanover sets forth the same allegations of an inadequate remedy at law and potential for irreparable harm entitling it to an equitable remedy that the Court found to be supported by the factual allegations in its claim for *quia timet* and exoneration. (*See* R. 80 ¶ 36.)

Defendants' only argument specifically pertaining to Count III is that "just as with the exoneration claim, Hanover has failed to request any relief that relates to [the specific performance] claim." (*See* R. 84 p. 5.) Under Illinois law, the relief available to a plaintiff upon proof of an action for specific performance is the performance of a defendant's duty under the contract. *See Butler v. Kent*, 655 N.E.2d 1120, 1126 (Ill. App. Ct. 1995). In spite of Durchslag's contention that Hanover's requested relief does not relate to this claim, in fact if the Court were to require "[Durchslag] to indemnify and exonerate Hanover for all liabilities, losses, and expenses incurred by Hanover as a result of Hanover having executed the Bonds" and to order "[Durchslag] to pay for Hanover's reasonable costs, including reasonable attorneys' fees" (R. 80, pp. 13-14), that

15

would constitute performance of its obligations under the contract to "exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment, and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees." (Amend. Compl. ¶ 9). Similarly, Hanover's request of the preliminary relief that Durchslag post collateral as security and require Durchslag to allow Hanover to access its books and records would, if granted, constitute specific performance of the explicit terms of the Indemnity Agreement. (*See* Amend. Compl. ¶¶ 12, 16.) Thus, the Court denies Durchslag's Motion to Dismiss Count III of the Amended Complaint.

### iv. Count IV–Preliminary Injunction

Count IV of Hanover's Amended Complaint requests preliminary injunctive relief requiring Durchslag to (1) post collateral as security for Hanover's obligations under the bonds; (2) enjoin and restrain Durchslag from selling, transferring, disposing of or licensing his assets or property; (3) granting a lien on all assets and property to Hanover; and (4) requiring Durchslag to provide Hanover access to his books and records for inspection and copying. (R. 80 ¶ 38, pp. 13-14.) Durchslag raises two separate arguments with respect to this Count. First, he contends that a request for a preliminary injunction is not a separate cause of action. Second, he argues that because Counts I, II, and III should be dismissed, Count IV must also be dismissed because a claim for preliminary injunction may not stand alone. (*See* R. 84, p. 6) (arguing that "since" a preliminary injunction "is not a cause of action, the amended complaint is devoid of a cause of action, as Counts I, II, and III fail to state claims upon which relief is sought or may be granted").

With respect to his first argument, Durchslag is correct that Hanover's "request for a preliminary injunction is not, itself, a cause of action on the merits of the case" (R. 84, p. 6). As Hanover concedes in its Response in Opposition to the Defendants' Motion to Dismiss, "a preliminary injunction is not, itself, a cause of action." (R. 81, p. 11.) Indeed, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"–it is a procedural device, not a cause of action. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Meridian Mut. Ins. Co. v. Meridian Ins. Co.*, 128 F.3d 1111, 1119 (7th Cir. 1997) (implying that the merits of the underlying causes of action are separate from the relief of a preliminary injunction because a plaintiff must demonstrate a likelihood of success on the merits of the underlying causes of action to prevail in a motion for a preliminary injunction). In sum, while Hanover's request for a preliminary injunction is not appropriately pled as a substantive cause of action in the Amended Complaint, it is appropriate as a requested form of relief. *See, e.g.*, *Padilla v. U.S.*, 659 F.Supp.2d 1290, 1294 (Ct. Int'l Trade 2009) ("[I]t is highly irregular for a party to request a preliminary injunction as part of the substantive relief sought in the Complaint itself. Indeed, such an approach is conceptually flawed. The Court therefore construes Count I as an application for preliminary injunction, and not as a substantive cause of action.") As Hanover acknowledges, a preliminary injunction is "a *remedy* that is available upon the showing of certain well-defined requirements," and whether Hanover has successfully made a showing of those requirements will be evaluated by the Court with respect to its Motion for Preliminary Injunction below. Thus, the Court grants Durchslag's Motion to Dismiss Count IV for a preliminary injunction as a separate cause of action, but its request for a preliminary injunction

17

remains as part one of its Prayer for Relief.

Because Durchslag's second argument with respect to the dismissal of Count IV goes to the larger issue of whether the Court may entertain Hanover's application for a preliminary injunction, it will be addressed below.

### D. CONCLUSION

For the reasons stated above, the Court denies Durchslag's Motion to Dismiss with respect to Counts I, II, and III of Hanover's Amended Complaint and grants Defendants' Motion to Dismiss Count IV, noting that its request for preliminary injunctive relief remains in the Amended Complaint as the first part of its Prayer for Relief.

## III. HANOVER'S MOTION TO STRIKE

Hanover has moved to strike four filings submitted by Durchslag that were either in violation of the Court's deadlines or filed without leave of the Court. (*See* R. 63.) Following Durchslag's two Motions for Extension of Time to Respond to Hanover's Motion for a Preliminary Injunction (R. 11, 12) and his Emergency Motion for a Continuance of the Hearing (R. 28), Durchslag filed a Response to the Motion for a Preliminary Injunction on March 12, 2010. (R. 36). Durchslag then filed a separate Supplemental Response and Notice of that Response on March 15, 2010. (R. 41, 42). On March 16, 2010 Durchslag filed another Motion for a Continuance of the Hearing (R. 43). On March 18, 2010, the Court gave Durchslag until April 1, 2010 to file a final Response to the Motion for a Preliminary Injunction and Hanover until April 8, 2010 to file a Reply. (R. 48). In direct contravention of this order, Durchslag waited until April 6, 2010 to file

18

his Response and Notice of Response.  (R. 60, 61.)  Hanover now moves to strike Durchslag's March 15, 2010 Supplemental Response and Notice (R. 41, 42) as unauthorized filings and his April 6, 2010 Response and Notice (R. 60, 61) as late filings.

Pursuant to Local Rule 78.3, "[t]he Court may set a briefing schedule. . . .  Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or a withdrawal of opposition thereto, but the court on its own motion or that of a party may strike the motion or grant the same without further hearing."  L.R. 78.3.  Notwithstanding Durchslag's inexcusable pattern of disregarding the Court's orders and filing deadlines, because Hanover filed a Reply to Defendants' April 6, 2010 Response and, as stated in open court on April 13, 2010, stands by that Reply, the Court will consider Durchslag's April 6, 2010 Response for the sake of thoroughness.  With respect to Durchslag's March 15, 2010 Supplemental Response, however, "it is within the district court's discretion to strike an unauthorized filing."  *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).  Because the Court did not authorize the filing of a Supplemental Response brief, the brief was filed late, and Durchslag was given an additional opportunity to respond on April 1,2010, the Court strikes the Supplemental Response and Notice.  *See Cleveland*, 38 F.3d at 297.

Hanover's Motion to Strike is therefore granted with respect to the March 15, 2010 Supplemental Response and Notice (R. 41, 42) but denied with respect to the April 6, 2010 Response and Notice (R. 60, 61).

19

## IV. HANOVER'S MOTION FOR PRELIMINARY INJUNCTION

### A. BACKGROUND

A federal court presented with a motion for a preliminary injunction may conduct an evidentiary hearing and make its determination on the basis of evidence presented at the hearing. *See* Fed.R.Civ.P. 65(a); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). This Court heard nearly eight hours of testimony from the parties. The Court's findings of fact are as follows:

In Court, Hanover did not call witnesses, but instead relied on the affidavits contained in its original Motion for Preliminary Injunction and Reply (R. 9, 65). Hanover sought to compel the Defendants to provide Hanover with collateral security in order to secure surety payment and performance bonds issued by Hanover to the Defendants in a total liability amount of $20,000,000. As of the original filing date, Hanover had received $2,600,000 in claims on the bonds, arising from Defendants' failure to pay vendors and complete contracts. As of the time of the hearing on April 13, 2010, they had received $2,800,000 in payment bond claims.

The bonds issued by Hanover provide that Defendants are required to indemnify Hanover from all bond claims. Under the terms of the bonds, Hanover is entitled to demand access to Defendants' books and records and to request the posting of collateral in order to secure Hanover from future bond losses. Defendants have neither provided access nor posted collateral. There was some evidence that Singles has gone out of business—at the very least, no one at Singles had returned Hanover's calls, and an investigator hired by Hanover stated that Singles appeared to no longer be operating out of its registered place of business. Singles' filing for Chapter 11 protection supports this conclusion.

## B.  STANDARD OF REVIEW

A preliminary injunction represents an extraordinary exercise of judicial power, one which the Seventh Circuit has warned is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984).  Whether such a remedy is appropriate depends upon a two-step inquiry in which the court first analyzes whether a given circumstance meets the necessary threshold, and then balances the risks of harm to each of the parties.  *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America*, 549 F.3d 1079, 1085-86 (7th Cir. 2008).

To demonstrate an entitlement to a preliminary injunction, a plaintiff must show (1) that irreparable harm will be done if the preliminary injunction is denied, (2) that the available remedies at law are inadequate, and (3)) that it has some chance of success on the merits of its case. If the plaintiff meets this initial showing, then the Court must balance the harm to the plaintiff in the event the injunction were to be denied against the harm to the defendant if the injunction were to be granted.  *See id.* at 1086.

## C. DISCUSSION

As an initial matter, Durchslag makes several arguments going to the Court's ability to entertain Hanover's Motion for a Preliminary Injunction.  Durchslag maintained throughout the hearing for a Temporary Restraining Order, the Preliminary Injunction hearing, and their Motion to Dismiss Count IV, that Hanover failed to state a valid cause of action for permanent relief in Counts I, II, or III, such that the Court cannot entertain its Motion for Preliminary Injunction.  In other words, "[w]here there is no underlying cause of action over which the district court has

primary jurisdiction. . . it may not entertain an application for an injunction." *See Sires v. State of Washington*, 314 F.2d 883, 884 (9th Cir. 1963); *c.f. TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997) (mentioning that "the magistrate judge did not specify in her memorandum decision precisely which causes of action were the basis for the preliminary injunction"). Durchslag claimed that the Court has no jurisdiction to grant a preliminary injunction because the Amended Complaint fails to state an underlying cause of action in Counts I, II, and III. *See Nottleson v. A.O. Smith Corp.*, 397 F. Supp. 928, 933 (E.D. Wis. 1975) ("Where a district court has jurisdiction of a cause it may, under some circumstances, grant an injunction, preliminary injunction, or temporary restraining order. But where there is no underlying cause of action over which the district court has primary jurisdiction, it may not entertain an application for injunction.").

These cases, however, merely stand for the proposition that Hanover's Amended Complaint is not viable if the only proper request for relief is a preliminary injunction. As Durchslag himself acknowledges, his argument that the Court cannot maintain Hanover's Motion for a Preliminary Injunction depends on a finding that Counts I, II, and III fail to state causes of action for permanent relief–an argument the Court has already rejected. As explained above, Hanover's Amended Complaint states three valid claims for permanent relief–Counts I, II, and III–and its claim for preliminary injunction indicates that these are the underlying causes of action that are the basis for the preliminary injunction, explaining that "[b]y the express provisions of the Indemnity Agreements and by virtue of the equitable doctrines of exoneration and *quia timet*, Hanover is entitled to have the Indemnitors place funds or other security with it upon demand."

(R. 80, ¶ 38.) Indeed, through a description of the provisions of the contract requiring the posting of collateral upon demand, access to books and records, and exoneration and indemnification that underlie its claims for breach of contract, specific performance, *quia timet* and exoneration, Hanover has sufficiently pleaded causes of action underlying its request for a preliminary injunction. (Amend. Compl. ¶¶ 9, 12.)

Durchslag similarly maintains in his Response in Opposition to Hanover's Motion for a Preliminary Injunction that the Court may not entertain the Motion for Temporary Restraining Order because the relief sought is part of the final relief in the action. (R. 60, p.3.) (citing *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in the final decree")). Notably, Durchslag raised this objection before Hanover amended its complaint on May 19, 2010. (R. 80.) In the Amended Complaint, as described in detail in the discussion of Durchslag's Motion to Dismiss above, Hanover amended its prayer for relief to seek indemnification, exoneration, and attorneys fees in a separate "permanent relief" section. (R. 80, pp. 13-14.) Moreover, each of the remaining Counts in the Amended Complaint – Counts I, II, and III – successfully states a claim for permanent relief as well as preliminary relief. Because the preliminary injunction section of Hanover's prayer for relief no longer contains a demand for indemnification and exoneration, the relief sought in the Motion for a Preliminary Injunction would not give Hanover "the actual advantage which would be obtained in the final decree"–that is, full indemnification and exoneration. *See W.A. Mack*, 260 F.2d at 890. Instead, the Motion for Preliminary Injunction would only require the posting of collateral, an injunction against

transferring assets, and a viewing of books and records, in an attempt to ensure that Durchslag will

be able to indemnify or exonerate Hanover if it succeeds on the merits. Thus, the Court finds that,

pursuant to Federal Rule of Civil Procedure 65(a), the Court may decide Hanover's Motion for a

Preliminary Injunction.

In accordance with the changes made in Hanover's First Amended Complaint (R. 80),

Hanover's current request for a preliminary injunction seeks the following relief: (1) that

Durchslag be required to place with Hanover the initial amount of $1,749,771.73 of funds by

money, property, or liens or security interests in property, and any additional amount as

determine by Hanover as security for its obligations; (2) that Durchslag be enjoined from selling,

transferring, or disposing or liening their assets and property, and further enjoining and

restraining Durchslag from allowing his assets and property to be liened, unless and until Hanover

shall receive the funds requested in paragraph 1; (3) that Hanover be granted a lien upon all assets

and property in which Durchslag has an interest to remain in effect until Hanover receives the

funds requested in paragraph 1–the purpose of which is to secure Hanover against any loss that

it may sustain under the Bonds; and (4) require Durchslag to give Hanover access to his books and

records for inspection and copying. (R. 80, p. 13.) The Court addresses each of these requests for

relief in light of the standard for evaluating motions for a preliminary injunction described above.

### i. Irreparable Harm

Hanover asserts that in the absence of a preliminary injunction , it will suffer irreparable

harm in that it will lose its contractual rights to be indemnified by Durchslag for claims due under

the bonds, including the contractual right to immediate posting of collateral sufficient to indemnify

24

Hanover for claims asserted against it.

Hanover has therefore met its initial burden to show that it would suffer irreparable harm in the loss of its contractual rights if it is denied injunctive relief. Durchslag's response, that Hanover can obtain by final judgment the relief it seeks by preliminary injunction through specific performance, ignores prevailing case law in Illinois that contracts that specifically require the posting of collateral upon assertion of a claim are designed to prevent the squirreling of assets by a defendant in order to avoid ultimate performance on the terms of the contract. In *United Fire & Casualty Co. v. Goggeshall Construction Co., Inc.*, the indemnity agreement at issue contained a nearly identical clause to that at issue in this case, which provided that "Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists *or is asserted* against the Surety, whether or not the Surety shall have made any payment therefore." *See United Fire & Casualty Co. v. Goggeshall Construction Co., Inc.*, 1991 WL 169147, at *1 (C.D. Ill. June 28, 1991) (Mills, J.) (emphasis added). In granting the plaintiff's motion for a preliminary injunction, the *Goggeshall* court held that verified filings by the plaintiff showed that it faced payment bond obligations of approximately $600,000, and that, as such, the plaintiff was entitled to specific performance of the indemnity agreement at issue. The Court found that a judgment for money damages at the end of a trial would irreparably harm the plaintiff "by depriving it of pre-judgment relief to which it is contractually entitled." *See id.* at *2; *see also United States Fidelity and Guaranty Ins. Co. v. Cler Construction Serv's, Inc.*, 2003 WL 1873926 (N.D. Ill. April 11, 2003) (granting preliminary injunction for posting of contractually entitled collateral because "a plaintiff would suffer irreparable harm" if it were removed "form the security position for

which it bargained"). Similarly, here, Hanover and Durchslag bargained for pre-judgment relief as a specific term of the Indemnity Agreement, such that failure to grant the preliminary injunction would irreparably deprive Hanover of its contractual rights under the Indemnity Agreement.

Although Durchslag did not frame his Response to the Motion for Preliminary Injunction to address the factors considered by the Court in a preliminary injunction hearing, Durchslag's argument that the Court has already ordered the posting of collateral security in its temporary restraining order ruling appears to go towards whether irreparable harm will be done if the preliminary injunction is not issued.[2] On March 18, 2010, the Court ordered Defendants "to provide collateral security in the amount of $2.6 million by 5:00 pm on March 19, 2010." (R. 48). Durchslag argues that Hanover will suffer no irreparable injury if the preliminary injunction is denied because the Court already ordered a mandatory injunction for the posting of collateral. To begin, however, the amount of collateral that Hanover sought to be provided in the Temporary Restraining Order hearing was an approximation of the obligations requiring securitization. Hanover currently seeks a different amount of $1,749,771.73 as security for its obligations. If the Court now ordered the posting of this collateral, it would merely moot the Court's March 18, 2010 Temporary Restraining Order. Furthermore, Durchslag is incorrect that "there will be no injury or harm to the plaintiff as a result" of denying the Motion for a Preliminary Injunction "because there is no continuing conduct to enjoin." (R. 60, p. 3.) As explained above, in its preliminary injunction demand, Hanover requests not only the posting of this collateral security, but additional relief in the form of an injunction preventing Durchslag from disposing of his assets or allowing

---

[2]Defendants' other arguments in their Response specifically relate to one or both of the Company Defendants, and therefore shall not be addressed in this Opinion.

them to be liened, granting a lien on all assets or property in which Durchslag has an interest, and requiring access to books and records. These forms of relief were not in any way addressed by the Court's Temporary Restraining Order ruling, and indeed, are immediately relevant because this Court has approved Magistrate Judge Kim's Recommendation that Durchslag failed to comply with the Court's March 18, 2010 TRO Order. In other words, Durchslag has not obeyed the Court's order to post collateral security, and so the further requested relief of enjoining him from transferring or selling assets and granting a lien on his property in the meantime becomes immediately relevant to prevent the potential irreparable harm to Hanover that it will never be able to reach any of Durchslag's assets to settle its obligations.

### ii. Inadequacy of Remedy at Law

No adequate remedy at law exists in action for specific performance of a surety indemnification provision (called a *quia timet* action) because a judgment for money damages alone would deprive the surety of "prejudgment relief to which it is contractually entitled." *See, e.g., Travelers Cas. & Sur. Co.*, 2004 WL 1794915 at *5; *see also Cler*, 2003 WL 1873926 at *2 (plaintiff "would suffer irreparable harm when forced to defend a lawsuit absent the contractually promised indemnity."); *United Fire*, 1991 WL 169147, at * 2 (finding that a judgment of money damages at the end of the case without the relief of specific performance through a preliminary injunction requiring the posting of collateral was "not an adequate remedy").

### iii. Likelihood of Success on the Merits

In order to prevail upon an action for preliminary inunction, a plaintiff must demonstrate that it is likely that the plaintiff will ultimately succeed on the merits of the underlying claims.

### a. Likelihood of Success on Count I (Breach) and Count III (Specific Performance)

Hanover has demonstrated a likelihood of success on the merits of its breach of contract and specific performance actions. Preliminary injunctions on specific performance claims are sparingly issued, as an injunction requires the Court to command the defendant take a particular action. *See Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) ("Mandatory preliminary writes are ordinarily cautiously viewed and sparingly issued."); *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 945 (7th Cir. 2006) ("The normal remedy for breach of contract is an award of damages, not an order of specific performance."). In this case, however, Hanover has demonstrated both that the Indemnity Agreement specifically provides Hanover the right to hold funds as collateral in the event certain conditions are satisfied, and has demonstrated that it satisfied the contractual conditions precedent in that it has received specific claims against the bonds issued to Defendants. (See Compl. Ex. 1, Agreement of Indemnity, ¶ 3; Mot. Prelim. Inj., Ex. A, Affidavit of John A. McDevitt (listing bond claims).

The Indemnity Agreement states that:

> The Surety shall have the right to hold such funds as collateral (without any obligation to earn interest on the collateral for the Indemnitors) until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees, or any other expense.

(Am. Compl. ¶ 12.). Likewise, the Indemnity Agreement specifically permits the granting of liens, and access to books and records. Each of these is susceptible to a specific performance remedy because the Indemnity Agreement says that Durchslag agreed to provide Hanover "or its

28

designated agents . . . full and free access to the Indemnitors' books and records *at any and all reasonable times* until the liability of the Surety under any bond is completely terminated and the claims of the Surety against any Indemnitor are fully satisfied." (Am. Compl. ¶ 16) (emphasis added). As access to the books and records and the granting of liens both allow Hanover to protect itself from future liability, there would not be an adequate remedy for Hanover if these two provisions were held to be remedied only by subsequent monetary damages, rather than specific performance.

In his final attempt to claim that Hanover is unlikely to succeed on the merits of the breach of contract and specific performance claims, Durchslag argues that "Hanover may have breached the contract by failing to mitigate damages." (R. 60, p. 13.) The duty to mitigate damages is "read into every contract" and "is the duty laid on one party to a contract not to take advantage of the other during the performance stage should circumstances deliver the latter into the power of the former . . . It forbids the victim of a breach of contract . . . to allow his damages to balloon (when he could easily prevent that from happening." *Moran Foods, Inc. v. Mid-Atlantic Market Dev. Co., LLC*, 476 F.3d 436, 440 (7th Cir. 2007). Durchslag argues that he is likely to succeed on an affirmative defense for failure to mitigate based on Hanover's taking "advantage of" Durchslag and the Defendants during the performance stage of the contract. Durchslag points to an alleged letter sent by Kevin Liford, Roofing Specialist in Construction Management at the Indiana University Project, stating: "Indiana University is very concerned with Singles Roofing and your state of business. Your own bonding company has contacted me and told me that you were going out of business and we should not expect Singles Roofing to be in any condition to finish the

29

Ogle/Knobview roofing project. He went on to tell me he went to your Elgin Illinois office and it was closed up as if you were already out of business." Not only does Durchslag not provide an affidavit or any evidence supporting the existence of this letter, but the letter does not name who made these statements. Durchslag also claims that certain of the bond claims are subject to litigation in Texas state court as to whether Hanover engaged in tortious interference with contractual relations and defamation. Again, Durchslag cites no support for the existence of such a lawsuit or the claims or evidence in it. Furthermore, the mere existence of this lawsuit does not support the truth of the allegations against Hanover which would tend to support an inference that Durchslag would have a valid claim for failure to mitigate.

### b. Likelihood of Success on Count II (*Quia Timet*)

As with Counts I and III, Hanover has demonstrated a likelihood of success on the meirts of Hanover's exoneration and *quia timet* claim. A court of equity may, at a surety's request, seize funds due to the surety's principal and apply them to the principal's debts if the surety can show that debts are currently due, that the principal refuses to pay them, and that if they are not paid the surety will become liable. *See Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954); *Travelers Cas. & Sur. Co. v. Ockerlund*, 2004 WL 1794915 (N.D. Ill. Aug. 6, 2004) (Plunkett, J.) (applying the Seventh Circuit standard). Although "*quia timet* and exoneration contain common substantive elements," to be entitled to exoneration a surety must establish that a debt "is presently due," and to be entitled to *quia timet* it must establish that the debt "will become due." *See Borey v. Nat. Union Fire Ins. Co. of Pittsburgh, Penn.*, 934 F.2d 30, 32 (2d Cir. 1991) (citing *New Orleans v. Gaines' Adm'r*, 131 U.S. 191 (1889)). In the present action, Hanvoer has demonstrated that a debt

is presently due, and therefore has demonstrated a likelihood of success on actions of both exoneration and *quia timit*.

### iii. Balancing of Harms

Upon a determination that a plaintiff has met the first three prongs of the test for a preliminary injunction, the Court must "weigh[] the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086. Here, the balance of harms weighs in Hanover's favor with respect to the posting of collateral, because the requested relief would only put the parties in the position for which they originally bargained and would not favor Hanover at Durchslag's expense. If Hanover does not use the collateral posted by Durchslag to defend or pay the claims under the bonds, the funds can and will be returned. If the preliminary injunction is denied, however, Hanover will lose the benefit of its bargain and be required to expend its own funds to defend the claims. *See Cler*, 2003 WL 1873926 at *2.

The balance of the harms also weighs in favor of permitting access to books and records, and injunction on the transfer of property, and the granting of liens against Durchslag's property. As with the posting of collateral, Durchslag will not be harmed by the granting of this injunction with respect to his assets, as he will be free to transfer them once the liabilty to Hanover is satisfied, and Hanover will be required to release any liens on Durchslag's property upon satisfaction of Durchslag's obligations under the Indemnity agreement. But as demonstrated by Durchslag's two previous bankruptcy filings, the most recent of which resulted in a stay of this

31

case until Durchslag received a denial of discharge on grounds of untimeliness, Durchslag may

well file bankrutpcy again.  Were the Court to deny this injunctive relief, and Durchslag to refile,

Hanover's claim to any assets of Durchslag would fall to the end of what may well be a long line

of unsecured creditors, and would severely harm Hanover's ability to recover against Durchslag.

### D.  CONCLUSION

Because Hanover has a strong likelihood of success on the merits under the terms of its

Indemnity Agreement with Durchslag, has shown that it will suffer irreparable harm without an

injunction, and has demonstrated that the balance of harms weighs in its favor, the preliminary

injunction is granted as to the posting of collateral to secure Hanover's obligations, including the

grant of liens on the assets of Durchslag to secure such posting, and access to Durchslag's books

and records.

## V.  RECOMMENDATION FOR SANCTIONS

The Court hereby adopts the Magistrate Judge's Recommendation with respect to

Durchslag. Durchslag's Objection to the Recommendation makes no attempt to dispute the factual

findings in the Recommendation in any respect.  The Objection relies solely on the application of

11 U.S.C. § 362, the automatic stay, to these proceedings as the basis to vacate the

Recommendation.   In light of the denial of discharge of Durchslag's bankruptcy petition, the

automatic stay no longer applies to Durchslag. See 11 U.S.C § 362(c)(2)(C).

Hanover shall provide the Court with evidence of the fees and costs incurred in connection

with the prosecution of the rule to show cause.  With respect to Hanover's request that this Court

increase the sanctions set forth in the Recommendation to encompass Hanover's fees and costs

related to Durchslag's bankruptcy because the petition was a "patently improper bankruptcy" filed in bad faith and with the goal of frustrating this Court's proceedings, Durchslag's motivations for filing his bankruptcy petition are not presently before the Court, and it is not apparent that jurisdiction for bad faith bankruptcy petitions lies with this Court rather than the Bankruptcy Court. Consequently, this Court denies Hanover's request for additional sanctions without prejudice.

## VI. CONCLUSION

For the reasons set forth above, Durchslag's Motion to Dismiss is denied with respect to Counts I, II, and III, and granted with respect to Count IV; however, the request for preliminary injunction shall remain in Hanover's prayer for relief. Hanover's Motion to Strike is granted with respect to the March 15, 2010 Supplemental Response and Notice (R. 41, 42) but denied with respect to the April 6, 2010 Response and Notice (R. 60, 61). Hanover's Motion for Preliminary Injunction with respect to Durchslag is granted, and Durchslag shall post collateral, and Hanover shall be granted liens on Durchslag's assets constituting collateral, in the amount of $1,749,771.73. Magistrate Judge Kim's recommendation for sanctions is approved and entered as to Durchslag. Hanover shall file within 10 days of the entry of this Order a statement of the amount of attorneys' fees and costs incurred in connection with the filing and prosecution of the rule to show cause.

It bears reminder that the above ruling pertains only to Durchslag as this case remains stayed against the Company Defendants in light of the pending bankruptcy of the Company Defendants. All of the motions and objections addressed in this petition were fully briefed prior to the date the Defendants filed for bankruptcy; therefore, the Company Defendants have not been

required to make any efforts before this Court to defend themselves with respect to this Motion since the time of their filing for bankruptcy. Nevertheless, the Court is mindful that the Company Defendants are subject to the rights and protections afforded to debtors pursuant to 11 U.S.C. § 362, including the provision that no case shall be "continued" against a defendant debtor. As many of the facts of the case alleged against Durchslag relate to the actions and assets of the Company Defendants, o the extent that Hanover requires information from the Company Defendants as part of its discovery against Durchslag ( including, but not limited to, access to the books and records of the Company Defendants, which may not be accessed by virtue of the above ruling against Durchslag personally), Hanover must first proceed by motion in the Company Defendants' ongoing bankruptcy to obtain permission from the bankruptcy court for an examination of the Company Defendants pursuant to Federal Rule of Bankruptcy Procedure 2004. The application of this ruling to the Company Defendants shall be addressed in a separate opinion at such time as the Company Defendants are no longer protected by operation of the automatic stay.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 21, 2012

34